UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PAUL BOWARY, M.D.,<br><br>      Plaintiff,<br><br>   v.<br><br>UNITED STATES MEDICAL LICENSING EXAMINATION, NATIONAL BOARD OF MEDICAL EXAMINERS, and THE FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INC.,<br><br>      Defendant. | Case No. 1:21-cv-00278-JJM-LDA |

**DEFENDANTS' MOTION TO VACATE THE COURT'S
<u>PRELIMINARY INJUNCTION OF AUGUST 30, 2021</u>**

Pursuant to Fed. R. Civ. P. 60(b), defendants the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards ("FSMB") respectfully request that the Court vacate the mandatory preliminary injunction order issued from the bench on August 30, 2021, and not enter any written preliminary injunction order in this matter.

The preliminary injunction was based, in part, on a finding that plaintiff Paul Bowary, M.D. ("Dr. Bowary") would suffer irreparable harm, including possible deportation, if he did not have an active medical license. According to Dr. Bowary's motion papers, passing the United States Medical Licensing Examination ("USMLE") was his only path to licensure and avoiding deportation.

New facts warrant the Court's revisiting its decision. In or around October 19, 2021, Dr. Bowary entered into a Consent Order with the Rhode Island Board of Medical Licensure and Discipline ("BMLD") that fully restored his medical license and allows him to practice medicine

in Rhode Island on an unrestricted basis, subject to certain terms set forth in the Consent Order. *See* Ex. A hereto. The Consent Order also notes that Dr. Bowary has been offered employment by a new employer. Therefore, the risk of irreparable harm urged by Dr. Bowary to support his preliminary injunction motion no longer exists (if it ever existed).

Preliminary injunctions are supposed to be "drastic" and "extraordinary" remedies, warranted only upon a clear showing that irreparable harm is imminent and non-speculative. Regardless of whether it was warranted when originally entered, the preliminary injunction granted by the Court is no longer equitable or appropriate. Dr. Bowary's claim of irreparable harm at the time he filed his preliminary injunction motion was speculative, at best, and it is now clear that he does not face any risk of suffering the irreparable harm that he relied upon to justify his emergency preliminary injunction. The Court's preliminary injunction order should therefore be vacated.

## **BACKGROUND**[1]

According to the Amended Complaint, Dr. Bowary is a 2014 graduate of the American University of Beirut Faculty of Medicine who completed a psychiatry residency program at Brown University. Amended Complaint ¶¶ 15-16, 23.

NBME and FSMB co-own the United States Medical Licensing Examination ("USMLE"), a standardized examination used to evaluate applicants' competence for medical licensure. *See* Declaration of Amy Buono ("Buono Decl.") (Dkt. 21-3) ¶¶ 2-6. Licensing authorities across the United States, including the BMLD, rely upon the USMLE in evaluating the qualifications of individuals seeking an initial license to practice medicine. *Id.* ¶ 7.

---

[1] Defendants are providing an abridged version of the background facts, focusing on the points pertinent to this motion. A more complete recitation is found in Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 21), at pp. 3-13.

Three "Step" exams make up the USMLE: Step 1, Step 2 Clinical Knowledge ("Step 2 CK"), and Step 3. *Id.* ¶ 8. Step 1 assesses whether candidates can apply basic science concepts that are important to the practice of medicine. *Id.* Step 2 CK assesses an examinee's ability to apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision. *Id.* And Step 3 assesses whether candidates can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine. *Id.*

Dr. Bowary took and passed Step 1, Step 2 CK, and Step 2 CS[2] of the USMLE. *See* Buono Decl. ¶ 14. He took Step 3 on April 8, 2018, and he failed. Declaration of Carol Morrison ("Morrison Decl.") (Dkt. 21-1) ¶ 8. He took the test again on December 28, 2018, and failed again. *See* Buono Decl. ¶ 17.

On March 5, 2020, Dr. Bowary sent an email to FSMB regarding his April 2018 USMLE Step 3 score. Buono Decl. ¶ 19. According to Dr. Bowary's email, he received a letter by email from webmail@nbme.org in July 2019 informing him that his April 2018 Step 3 score had been rechecked and he passed the examination. *Id.* Ex. E. He attached the putative revised score report to his email to FSMB, bearing his name and USMLE number, a Step 3 exam date of April 8, 2018, and a passing score of 199, along with a screenshot of the July 8, 2019 email that he supposedly received from NBME. *Id.* Dr. Bowary also sent this communication to the Rhode Island Department of Health ("RIDOH"). *Id.* ¶ 20 and Ex. F.

By letter dated April 27, 2020, the Office of the USMLE Secretariat informed Dr. Bowary that evidence was available that he may have engaged in irregular behavior by altering his Step 3 score report and presenting it to FSMB, NBME, and the RIDOH as authentic. Buono

---

[2] Step 2 CS is a clinical skills component of the USMLE that was suspended in May 2020 due to the COVID-19 pandemic and subsequently discontinued. *See* Buono Decl. ¶ 8 n.1.

Decl. ¶ 21 and Ex. G.  The USMLE Committee for Individualized Review ("CIR") ultimately determined that Dr. Bowary engaged in irregular behavior and barred him from taking a future administration of the USMLE for a minimum of three years.  *Id.* ¶ 28 and Ex. K (September 23, 2020 letter).  On appeal, the USMLE Composite Committee found that the CIR complied with applicable USMLE policies and procedures and did not make a decision that was clearly contrary to the weight of the evidence before it.  *Id.* ¶ 39 and Ex. S.  The CIR decision therefore remained in place.

Dr. Bowary contacted the BMLD about the USMLE Secretariat's September 23, 2020 letter and the decision of the CIR, and at BMLD's request, "entered into a voluntary agreement not to practice medicine until the matter with the USMLE could be resolved."  *See* Affidavit of Paul Bowary M.D. ("Bowary Aff.") (Dkt. 8-2) ¶ 30.  Dr. Bowary signed the agreement on October 14, 2020.  *See* Declaration of David Johnson ("Johnson Decl.") (Dkt. 21-2) at Ex. B.

Dr. Bowary subsequently sought a preliminary injunction and expedited hearing in this Court, requesting that Defendants be ordered to immediately report a passing score on the Step 3 examination or, alternatively, permit him to immediately sit for the Step 3 examination.  *See* Pl.'s Mot. for Preliminary Inj. (Expedited Hearing Requested) (Dkt. 8) at 1.  In his supporting brief, Dr. Bowary argued that if he did not receive his requested relief, he "will likely be deported from the United States."  Mem. in Supp. of Pl.'s Mot. for Preliminary Inj. ("PI Br.") (Dkt. 8-1) at 1.  More specifically, Dr. Bowary argued:

> The BMLD will not permit him to practice medicine without an officially reported passing USMLE Step 3 score.  He has also lost employment as a psychiatrist.… The USMLE's barring Dr. Bowary from retaking and passing ***the one test that will permit him to return to the practice of psychiatry*** irreparably and irretrievably prevents Dr. Bowary from pursuing all aspects of the profession that permit him to establish the necessary foundations for a successful practice and for successful treatment of mental health payments.

> Moreover, … Dr. Bowary is at grave risk of being deported in the near future *if the BMLD is not provided with an official passing USMLE Step 3 score*.

PI Br. at 37 (emphases added).

Despite these unequivocal statements, Dr. Bowary admitted later in his brief that the BMLD could accept an alternative test, the Licentiate Medical Council of Canada exam (which he described as MCCQE Part I and Part II), for licensure. *Id.* at 39. Nevertheless, he insisted "it is extremely unlikely that Dr. Bowary will be able to take the MCCQE Part II in 2021 and it remains uncertain whether he will be able to take it in 2022." *Id.* (citing Bowary Aff. ¶ 44). Dr. Bowary therefore argued once again that he "needs an official passing USMLE Step 3 score to be reported to the BMLD" to avoid his alleged immigration problems. *Id.*

The Court held a hearing on August 30, 2021, and granted Dr. Bowary a preliminary injunction, albeit not the one that he had requested. During the hearing, the Court stated its finding that "irreparable harm will come to [Dr. Bowary] without affording him the proper procedure *by way of his continued lack of license and his potential deportation* …." Hearing Tr. (Ex. B hereto) at 36:13-16 (emphasis added).[3]

## STANDARD OF REVIEW

Under Rule 60(b), a court "may relieve a party" from a "final judgment, order, or proceeding" based on "[a] change in operative fact" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5); (b)(6); *Concilio de Salud Integral de Loiza Inc. v. Perez-Perdomo*, 551 F.3d 10, 16 (1st Cir. 2008).

---

[3] Even at that point, it appeared that the deportation issue was not as urgent as suggested by Dr. Bowary in his preliminary injunction papers. After the Court suggested that a written preliminary injunction order could include language that may assist Dr. Bowary's immigration lawyer in avoiding his deportation, she responded: "If I may, thank you, your Honor. This, of course, is not ripe at this time. We don't anticipate really a final decision on his visa application until perhaps December, but we appreciate your thinking in this regard." Hearing Tr. at 38:12-23.

"Although by its terms Rule 60(b)(5) concerns final orders, it has been interpreted to extend to modifications of preliminary injunctions." *Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 642, 648 (S.D.N.Y. 1991) (citations omitted); *see also B.P.G. Autoland Jeep Eagle Inc. v. Chrysler Credit Corp.*, 799 F. Supp. 1250, 1258 (D. Mass. 1992) ("As the … preliminary injunction is an interlocutory order of this court, the court retains power to modify or vacate.") (vacating preliminary injunction). "While a party seeking to modify a final injunctive decree must meet a heavy burden, such a strong showing is not necessary ... when a preliminary injunction is at issue." *Pro Edge L.P. v. Gue*, 411 F.Supp.2d 1080, 1088 (S.D. Iowa 2006).

"In the First Circuit, a district court may modify a preliminary injunction pursuant to Fed. R. Civ. P. 60(b)(5) where 'it is no longer equitable ...' and there is a 'significant ... change in operative fact.'" *S. New England Tel. Co. v. Global Naps, Inc.*, 620 F. Supp. 2d 152, 154 (D. Mass. 2009) (quoting *Concilio de Salud Integral de Loiza*, 551 F.3d at 16); *see also Horne v. Flores*, 557 U.S. 433, 453 (2009) (a court should consider changes in factual conditions or the law when considering a Rule 60(b)(5) motion relating to an injunction); *Petties v. District of Columbia*, 662 F.3d 564, 566 (D.C. Cir. 2011) (remanding case so that the district court could decide whether the risk of imminent harm that warranted a preliminary injunction had been ameliorated due to changed circumstances, on appeal from the denial of a Rule 60(b)(5) motion to vacate a preliminary injunction); *Berger v. NBME*, 2020 WL 2110576, at *2 (S.D. Ohio 2020) (finding a substantial issue whether plaintiff suffered or continued to suffer irreparable harm warranting injunctive relief, where plaintiff previously claimed irreparable harm if he could not test with accommodations in the fall of 2019 but then repeatedly delayed testing after a preliminary injunction issued) (granting motion for indicative ruling).

"In ruling on a motion to modify or dissolve a preliminary injunction, the Court exercises the same discretion it exercised in granting the injunction in the first place." *Toledo Area AFL-CIO Council v. Pizza*, 907 F. Supp. 263, 265 (N.D. Ohio 1995) (modifying preliminary injunction based on changed facts), *aff'd in part and rev'd in part on other grounds*, 154 F.3d 307 (6th Cir. 1998).  "Just as the absence of irreparable harm constitutes a sufficient ground for an appellate court to vacate an injunction, the absence of irreparable harm likewise constitutes a sufficient ground for an issuing district court to dissolve a preliminary injunction." *Johnson v. Freeman*, 2005 WL 8176829, at *2 n.2 (E.D. Mo. 2005); *see also Hood Packaging Corp. v. Steinwagner*, 2015 WL 1197530, at *1 (D. Minn. 2015) ("'The absence of irreparable harm is sufficient grounds for vacating a preliminary injunction.'") (citations omitted); *Bayoh v. Afropunk LLC*, 2020 WL 7482994, at *1 (S.D.N.Y. 2020) ("Since [Plaintiff] cannot establish any irreparable harm, it is both necessary and appropriate to vacate the preliminary injunction.").

## ARGUMENT

**I.  The Court's Preliminary Injunction Should Be Vacated Because There Is No Longer A Basis For Concluding That Dr. Bowary Risks Suffering Irreparable Harm.**

   **A.  Preliminary injunctions are proper only if the plaintiff demonstrates a risk of irreparable harm that is certain and imminent.**

A preliminary injunction is an "extraordinary" and "drastic" remedy that should not be granted unless a plaintiff shows that the four prerequisite factors all support the requested relief. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted).  A plaintiff must make a "clear showing" that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter*, 555 U.S. at 20, 22.  The moving party has the burden of proving all four elements. *Id.*

"'[I]rreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'" *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009) (citation omitted). "'The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.'" *Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (citations omitted). Moreover, "the harm cannot be speculative, and subjective apprehensions and predictions cannot establish an immediate threat of irreparable harm." *Taylor v. Connecticut Dep't of Corrections,* 2005 WL 8174479, at *2 (D.R.I. 2005).

**B.     Dr. Bowary's prior claim of irreparable harm is no longer supported (if it ever was).**

In his preliminary injunction papers, Dr. Bowary represented to the Court that he needed an active medical license to avoid irreparable harm, including possible deportation, and that the USMLE was his only available path to licensure. *See supra*. Relying on those arguments, the Court granted Dr. Bowary a preliminary injunction.

New facts show that Dr. Bowary no longer faces the threat of irreparable harm he previously claimed to confront, if he ever faced such a threat. On or about **October 19, 2021**, Dr. Bowary and the RIDOH agreed to a new Consent Order that allows Dr. Bowary to resume practicing medicine in Rhode Island. *See* Exhibit A. According to the Consent Order, Dr. Bowary has passed "another Board approved exam" that satisfies BMLD's licensure regulations, and he also has been offered employment as a physician. *See id.* ¶¶ 9-10. Therefore, Dr. Bowary now has both an active medical license and a job, which are what he said he needed to avoid deportation. He longer has any plausible basis for asserting that he faces a risk of irreparable harm if he is not granted a mandatory preliminary injunction while he litigates the merits of his claims.

Indeed, Dr. Bowary himself has previously argued that his passing another examination that is acceptable to the RIDOH and the BMLD would obviate the need for a preliminary injunction. *See* Reply Mem. in Supp. of Pl.'s Mot. for Preliminary Injunction (Dkt. 15) at 18 ("Clearly, Dr. Bowary and his counsel appropriately and diligently pursued a path to resolving his licensure issue with the BMLD before seeking a [preliminary] injunction against the Defendants when it appeared Dr. Bowary would not be able to take the MCCQE Part II, the passage of which likely will resolve the issue and obviate the need for the preliminary injunction [he] now seeks."). He does not face irreparable harm, and a preliminary injunction under these facts is unwarranted. *See LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016) (injunction can be modified "if the circumstances, whether of law or fact, obtained at the time of its issuance have changed, or new ones have since arisen").

Finally, although it is not necessary to sort out the details of how Dr. Bowary reached his new Consent Order with BMLD for purposes of vacating the preliminary injunction, this turn of events raises questions regarding statements Dr. Bowary previously made to the Court. The Consent Order states that "[o]n or about October 18, 2021, [Dr. Bowary] supplied the Board with evidence that he passed another Board approved exam in satisfaction of § 1.5.4 of the Regulations." Ex. A ¶ 9. This other "approved exam" is presumably the Canadian MCCQE examination referenced in Dr. Bowary's preliminary injunction papers. During preliminary injunction briefing, Dr. Bowary suggested that he would have to pass Parts I and II of the Canadian exam in order to rely upon that exam in lieu of the USMLE, and he represented that it was highly unlikely he would be able to take Part II of this examination in 2021, which made passing the USMLE his only option for licensure in Rhode Island and avoiding deportation. *See supra.* It appears, however, that the Licentiate of the Medical Council of Canada changed its

eligibility criteria as of June 29, 2021 -- which is prior to when he filed his motion for a preliminary injunction -- to no longer require the MCCQE Part II examination from certain individuals.  *See* https://mcc.ca/about/lmcc/?cn-reloaded=1 (attached at Exhibit B).

Presumably, Dr. Bowary passed Part I of the Canadian exam and was excused by the RIDOH from taking Part II of that examination because of the change in the Canadian eligibility criteria.  This suggests that Dr. Bowary's claimed risk of irreparable harm was inaccurately presented to the Court in his preliminary injunction papers; at the very least, the claimed risk was unduly speculative insofar as it characterized the Step 3 exam as his only viable avenue to resuming the practice of medicine in time to avoid deportation.

Dr. Bowary filed a motion on October 13, 2021 asking the Court to enter his proposed preliminary injunction order (Dkt. 22).  His proposed order would require Defendants and the CIR to act on an expedited schedule in rehearing Dr. Bowary's case, and to issue an expedited decision, based upon Dr. Bowary's claims of an ongoing risk of irreparable harm:

> For the reasons set forth in the papers Plaintiff submitted to the Court in support of his Motion for Preliminary Injunction and those stated at the hearing on that Motion, time is of the essence for the Plaintiff. The voluntary agreement not to practice medicine the Rhode Island Board of Medical Licensure and Discipline required the Plaintiff to enter and his inability to work and practice psychiatry since his termination by Butler Hospital on October 2, 2019 significantly and continuously harms him. Moreover, Plaintiff faces the very real possibility of deportation from the United States.

*See* Dkt. 22 at 3 (citation omitted).  The new Consent Order is dated October 19th and was obviously in the works for some period of time before that.  Dr. Bowary, however, did not notify Defendants or the Court that he and the RIDOH had entered into this new Consent Order, even though it is clearly relevant to Dr. Bowary's pending motion asking the Court to enter his proposed preliminary injunction order and directly contradicts arguments made in support of that motion.

Dr. Bowary's proposed preliminary injunction order includes the following sentence: "The Court further finds that Plaintiff will suffer irreparable harm unless this Preliminary Injunction is issued, because of his medical licensure status and his potential deportation." (Dkt. 22, Ex. A).   Because of the new Consent Order, that finding is no longer supportable.  Dr. Bowary now has an unrestricted license to practice medicine in Rhode Island and a job offer, which means he can no longer claim to face an imminent risk of deportation.  Yet, in a motion that remains pending, he is asking the Court to enter an order that includes factually unsupportable findings regarding his licensure status and his risk of deportation.

Because the factual predicates for Dr. Bowary's claim of irreparable harm no longer exist, it is no longer equitable for the Court's preliminary injunction ruling to remain in effect, and no written preliminary injunction order should be entered.  Instead of entering either party's proposed preliminary injunction, the Court should vacate its prior ruling from the bench based upon the changed facts described above.  It would be inappropriate for the Court to enter any preliminary injunction order that includes and is necessarily anchored in an irreparable harm finding that has no factual basis because of the October 19, 2021 Consent Order between Dr. Bowary and the RIDOH.   Absent a risk of irreparable harm, there is no basis for a preliminary injunction, *Winter*, 555 U.S. at 20, 22, much less a *mandatory* preliminary injunction that awards Dr. Bowary injunctive relief that he would otherwise receive only if he prevailed on the merits of his claims following discovery and the other protections afforded litigants under the Federal Rules of Civil Procedure.

**CONCLUSION**

The Court's preliminary injunction order should be vacated.

Dated:  November 9, 2021.                    Respectfully submitted,

/s Stacey P. Nakasian_____
Stacey P. Nakasian (Bar No. 5069)
SNakasian@duffysweeney.com
Duffy & Sweeney, Ltd.
321 South Main Street, Suite 400
Providence, RI 02903-7109
Telephone:  401-455-0700
Facsimile:   401-455-0701

Robert A. Burgoyne - *pro hac vice*
RBurgoyne@perkinscoie.com
Caroline M. Mew - *pro hac vice*
CMew@perkinscoie.com
Perkins Coie LLP
700 13th St., N.W., Suite 800
Washington, DC 20005-3960
Telephone: 202-654-6200
Facsimile:  202-654-6211

Attorneys for Defendants NBME and FSMB

**CERTIFICATE OF SERVICE**

I certify that on November 9, 2021, I electronically e-filed the foregoing document(s) and that they are available for viewing and downloading from the Court' s CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Stacey P. Nakasian_____