UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PAUL BOWARY, M.D., <br><br>             Plaintiff-Counterclaim Defendant, <br><br>   v. <br><br> UNITED STATES MEDICAL LICENSING EXAMINATION, <br><br>             Defendant, <br><br> NATIONAL BOARD OF MEDICAL EXAMINERS, <br><br>             Defendant-Counterclaim Plaintiff, <br><br> and THE FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INC. <br><br>             Defendant-Counterclaim Plaintiff. | Case No. 1:21-cv-00278-JJM-LDA <br><br> **JURY TRIAL DEMANDED** |

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES AND NBME'S AND FSMB'S COUNTERCLAIMS

The United States Medical Licensing Examination ("USMLE"), National Board of Medical Examiners ("NBME"), and the Federation of State Medical Boards of the United States, Inc. ("FSMB"), by and through undersigned counsel, answer the Amended Complaint ("Complaint") of Plaintiff Paul Bowary ("Plaintiff" or "Bowary") as follows:[1]

---

[1] FSMB and NBME are answering the Complaint on behalf of the USMLE program, which is not an independent legal entity.

## PARTIES

1.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 1 and therefore deny them. Defendants admit the allegations in the second sentence of paragraph 1 on information and belief.

2.      In response to the allegations in paragraph 2 of the Complaint, Defendants deny that the USMLE is a legal entity with the capacity to sue or be sued and state that the USMLE is a three-step examination for medical licensure in the United States. Defendants admit that the USMLE program is owned and sponsored by NBME and FSMB and that the USMLE program office is located at 3750 Market Street, Philadelphia, Pennsylvania.

3.      Defendants admit the allegations in paragraph 3.

4.      Defendants admit the allegations in paragraph 4.

## JURISDICTION

5.      Defendants admit the allegations in paragraph 5 on information and belief.

6.      The allegations in paragraph 6 are legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants state that they are not challenging personal jurisdiction in Rhode Island in this action.

## BACKGROUND

7.      Defendants deny the allegations in paragraph 7 on the ground that they are vague and state that: NBME develops the USMLE through a collaboration with FSMB; USMLE content is developed and reviewed by medical school faculty and practicing physicians from around the United States; and USMLE results are intended to provide licensing authorities meaningful information from assessments of physician knowledge and skills that are important to the provision of safe and effective patient care.

8. Defendants deny the allegations in paragraph 8, and state that FSMB represents 70 state medical and osteopathic boards in the United States and supports its member boards as they fulfill their mandate of protecting the public's health, safety and welfare through the proper licensing, disciplining, and regulation of physicians and, in most jurisdictions, other health care professionals.

9. In response to the allegations in paragraph 9, Defendants admit that the USMLE program is jointly owned and sponsored by NBME and FSMB.

10. Defendants deny the allegations in the first sentence of paragraph 10 and state that NBME administers the USMLE Step examinations (Step 1, Step 2 Clinical Knowledge (CK), and Step 3) through a third-party vendor and NBME scores the USMLE Step examinations and reports the scores of the USMLE Step examinations. Defendants further state that medical licensing authorities across the United States, including in Rhode Island, rely on USMLE Step examination results to help evaluate the qualifications of individuals seeking an initial license to practice medicine. In response to the allegations in the second sentence of paragraph 10, Defendants state and admit that the USMLE Step examinations are administered in Rhode Island.

11. The allegations in paragraph 11 are legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants state that the allegations in paragraph 11 are supported by the statute cited.

12. Defendants admit the allegations in paragraph 12, except they state that the Rhode Island Board of Health was a charter member of FSMB in 1912.

13. Defendants admit the allegations in the first and second sentence of paragraph 13, but state that Rhode Island has full authority over issuance of a license, and the Rhode Island Board of Medical Licensure and Discipline ("BMLD") uses services provided by the FSMB to assist in

the processing of licensure applications. Defendants admit the allegations in the third sentence of paragraph 13 on information and belief, and further state on information and belief that in addition to FSMB application fees, applicants for a Rhode Island medical license pay fees directly to BMLD. Defendants admit the allegations in the fourth, fifth, and sixth sentences of paragraph 13. Defendants deny the allegations in the seventh sentence of paragraph 13, on information and belief. Defendants admit the allegations in the eighth sentence of paragraph 13. Defendants admit the allegations in the ninth sentence of paragraph 13, on information and belief.

14.     Defendants admit the allegations in paragraph 14 on information and belief.

15.     In response to the allegations in the first sentence of paragraph 15, Defendants admit on information and belief that Bowary received the degree of Doctor of Medicine in 2014 from the American University of Beirut Faculty of Medicine. Defendants admit the remaining allegations in paragraph 15 on information and belief.

16.     Defendants admit the allegations in the first sentence of paragraph 16 on information and belief. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 16 and therefore deny them.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 as worded and therefore deny them, but admit that Bowary received passing scores on Step 1 and Step 2 CK of the USMLE before he applied for Step 3 of the USMLE and that he took the Step 3 examination for the first time on April 8, 2018.

18.     In response to the allegations in paragraph 18, Defendants admit that NBME and FSMB entered into a contract with Bowary at the time he registered for Step 3 of the USMLE and that the terms of the contract are set forth in the then-applicable USMLE Bulletin of Information

and policies referenced therein; and that Bowary paid a fee to take the Step 3 exam. Defendants deny the remaining allegations in paragraph 18, which are vague.

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore deny them.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and therefore deny them.

21.     In response to the allegations in the first sentence of paragraph 21, Defendants admit that Bowary failed the April 8, 2018 Step 3 examination and deny that Bowary applied to take the Step 3 examination a second time on December 18, 2018 (he took the exam a second time on December 28, 2018). Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 and therefore deny them..

22.     Defendants deny the allegations in the first sentence of paragraph 22 and state that Bowary took the USMLE Step 3 examination a second time on December 28, 2018 and the reporting of his score was not delayed. In response to the allegations in the second sentence of paragraph 22, Defendants admit that Bowary failed the Step 3 exam on his second attempt and admit that Bowary applied to take the Step 3 examination a third time. Defendants deny the remaining allegations in paragraph 22.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 23 and therefore deny them. Defendants admit the allegations in the second sentence of paragraph 23 on information and belief.

24.     In response to the allegations in the first sentence of paragraph 24, Defendants admit on information and belief that Bowary completed the Uniform Application on FSMB's website, admit that Bowary paid the application fee to FSMB, admit that Bowary would have

requested FSMB to submit his Uniform Application to BMLD, and deny that Bowary's Uniform Application was transmitted by FSMB in February 2020 (it was submitted by FSMB on January 23, 2020). NBME denies the remaining allegations in the first sentence of paragraph 24. Defendants admit the allegations in the second, third, fourth, and fifth sentences in paragraph 24. Defendants deny the allegations in the sixth sentence of paragraph 24.

25.     In response to the allegations in the first sentence of paragraph 25, Defendants admit on information and belief that Bowary was contacted by a representative of the Rhode Island Department of Health (RIDOH) on March 4, 2020. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 25 and therefore deny them. In response to the allegations in the second sentence of paragraph 25, Defendants admit on information and belief that Bowary sent an email to RIDOH on March 5, 2020, to which he attached various documents, including a purported passing USMLE Step 3 score report, and deny the remaining allegations in that sentence. In response to the allegations in the third sentence of paragraph 25, Defendants admit that Bowary called NBME two times on March 5, 2020 regarding his Step 3 score, deny that Bowary "had been emailed by the NBME on July 8, 2019, indicating a recheck of the score on his April 8, 2018 USMLE Step 3 exam had resulted in a passing score," and refer to the recordings of the March 5, 2020 calls for a complete recitation of their content. In response to the allegations in the fourth sentence of paragraph 25, Defendants admit that Bowary sent copies of the email he purported to have received from NBME on July 8, 2019 and the purported attached score report and deny the remaining allegations in that sentence. In response to the allegations in the fifth sentence of paragraph 25, Defendants admit that on March 5, 2020, NBME sent an email to Bowary informing

him that his "situation has been escalated to the USMLE Secretariat's office for investigation." Defendants deny the remaining allegations in paragraph 25, which are vaguely worded.

26.    In response to the allegations in the first sentence of paragraph 26, Defendants admit on information and belief that Bowary forwarded a March 6, 2020 email from FSMB referencing an investigation by the USMLE Secretariat's office to RIDOH, but deny that Bowary accurately represented the background facts or investigation to RIDOH and therefore deny the remaining allegations in that sentence. Defendants deny the allegations in the second sentence of paragraph 26, which are vague, and state on information and belief that Bowary was granted a license to practice medicine on April 28, 2020, based on documents that Bowary submitted to BMLD purporting to show that Bowary had passed the Step 3 examination.

27.    In response to the allegations in the first sentence of paragraph 27, Defendants admit that the USMLE Secretariat sent a letter to Bowary over the signature of Amy Buono, Director of the Office of the USMLE Secretariat, dated April 27, 2020, and that Bowary accurately quotes from part of the letter (although one comma is omitted), but deny the characterization of this letter as the first communication to Bowary from the USMLE Secretariat between March 5 and April 27, 2020 and therefore deny the remaining allegations in that sentence. In response to the allegations in the second sentence of paragraph 27, Defendants deny that there were eight bulleted paragraphs in the April 27, 2020 letter (there were nine) and deny that Bowary has fully and accurately captured the content of those paragraphs in this sentence. In response to the allegations in the third sentence of paragraph 27, Defendants admit that Bowary accurately quotes from the April 27, 2020 letter but notes the quoted language also appears in a bullet point. Defendants admit the allegations in the fourth sentence of paragraph 27. Defendants admit that Bowary accurately quotes from the April 27, 2020 letter in the fifth sentence of paragraph 27.

28.     In response to the allegations in the first sentence paragraph 28, Defendants admit that Bowary appeared for a virtual meeting with the USMLE Committee for Individualized Review ("CIR") on August 20, 2020. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in that sentence and therefore deny them. Defendants deny the remaining allegations in paragraph 28 and state that Bowary submitted a written personal statement through his attorney.

29.     In response to the allegations in paragraph 29, Defendants admit that Bowary is describing, in part, the USMLE Policies and Procedures Regarding Irregular Behavior, but Defendants deny that the allegations are a full and complete summary of the USMLE Policies and Procedures Regarding Irregular Behavior, which, as provided to Bowary, were contained in a three-page document.

30.     Defendants admit that Bowary accurately quotes from part of Section B.3 of the USMLE Policies and Procedures Regarding Irregular Behavior in paragraph 30.

31.     Defendants admit that Bowary accurately quotes the words from Section B.4 of the USMLE Policies and Procedures Regarding Irregular Behavior in paragraph 31, but state that there is no bold print or underlining in this section of the Policies and Procedures.

32.     Defendants admit that Bowary accurately quotes the words from Section B.5 of the USMLE Policies and Procedures Regarding Irregular Behavior in paragraph 32, but state that there is no bold print or underlining in this section of the Policies and Procedures.

33.     Defendants deny that Bowary accurately quotes the words from Section B.8 of the USMLE Policies and Procedures Regarding Irregular Behavior in paragraph 33 (he omits a sentence), and state that there is no bold print or underlining in this section of the Policies and Procedures.

34.    Defendants admit the allegations in the first sentence of paragraph 34 on information and belief, deny the allegations in the second sentence of paragraph 34 (which do not accurately represent the content of the September 23, 2020 Letter), admit that Bowary accurately quotes from part of the September 23, 2020 Letter in the third sentence of paragraph 34, and admit that Bowary accurately quotes (except for one typo) portions of the September 23, 2020 Letter in the fourth sentence of paragraph 34 and the bullet points that follow. Defendants deny that the allegations in paragraph 34 constitute a full and complete recitation of the content of the 4+-page letter sent to Bowary on September 23, 2020 and therefore deny the remaining allegations in paragraph 34.

35.    Defendants admit on information and belief the allegations in paragraph 35 regarding Bowary's residency and admit the remaining allegations in paragraph 35.

36.    In response to the allegations in paragraph 36, Defendants admit on information and belief that Bowary entered into a Voluntary Agreement Not To Practice Medicine with BMLD in October 2020. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 and therefore deny them.

37.    In response to the allegations in paragraph 37, Defendants admit that Bowary accurately quotes from the September 23, 2020 letter in the final three bullet points and admit that the September 23, 2020 letter included bullet points that were not part of the April 27, 2020 letter. Defendants deny the remaining allegations in paragraph 37.

38.    In response to the allegations in paragraph 38, Defendants admit that: Bowary timely submitted a request for appeal of the CIR decision in an October 22, 2020 letter from his counsel addressed to Amy Buono, the CIR, and the Composite Committee; the letter set out

-9-

Bowary's position; and Bowary accurately quotes from a portion of the letter. Defendants deny the remaining allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Defendants admit that the USMLE Secretariat sent an email through Amber Montanano, a Program Manager in the Office of the USMLE Secretariat, acknowledging receipt of the October 22, 2020 communication from counsel for Bowary, and admit that Bowary accurately quotes from part of this email in this paragraph.

40.     In response to the allegations in the first sentence paragraph 40, Defendants admit that Amber Montanano, a Program Manager in the Office of the USMLE Secretariat, sent five emails to Bowary's counsel's office, four of which provided documents requested by Bowary's counsel in his October 22, 2020 letter. In response to the allegations in the second sentence of paragraph 40, Defendants admit that the USMLE Secretariat provided Bowary's counsel with a document entitled "Examinee Fraudulent Email Analysis – Proof of Concept" that was prepared by an NBME staff member regarding the purported July 8, 2019 email and score report that Bowary had provided to the USMLE Secretariat, and deny the characterization of this document in paragraph 40. Defendants deny the allegations in the third sentence of paragraph 40.

41.     In response to the allegations in paragraph 41, Defendants admit that, as of the date the Amended Complaint was filed, Bowary had not been provided with any recording or transcript of the CIR meeting in which he appeared on August 20, 2020, and deny the remaining allegations in the paragraph on the grounds they are vague.

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and therefore deny them.

43.     In response to the allegations in paragraph 43, Defendants admit that counsel for Bowary sent a letter addressed to Amy Buono and the Composite Committee and enclosed a

document titled "Expert Witness Report of Dr. Darren B. Hayes." Defendants deny Bowary's characterization of Dr. Hayes and this report in paragraph 43 and therefore deny the remaining allegations in this paragraph.

44.    Defendants deny the allegations in paragraph 44, which are vaguely worded, and state that in a February 10, 2021 email, counsel for Bowary apologized for "the timing" of the submission and indicated "we would have no objection" if the committee wanted more time to review Bowary's submission.

45.    In response to the allegations in the first sentence of paragraph 45, Defendants admit that Nicole Miller, a Program Manager in the Office of the USMLE Secretariat, sent an email to Bowary and Bowary's lawyer at 6:38 p.m. on Friday, February 12, 2021, but deny that Bowary has accurately paraphrased this email. In response to the allegations in the second sentence of paragraph 45, Defendants admit that the February 12, 2021 email attached a February 12, 2021 letter from Amy Buono in the Office of the USMLE Secretariat to Bowary and that Bowary accurately quotes from part of that letter. Defendants admit on information and belief the information regarding Bowary's medical residency in the third sentence of paragraph 45 and admit the remaining allegations in the third sentence of paragraph 45.

46.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 and therefore deny them.

47.    In response to the allegations in the first sentence of paragraph 47, Defendants admit on information and belief that Bowary asked RIDOH for permission to take the Special Purpose Exam ("SPEX exam") to obtain medical licensure in Rhode Island. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 47 and therefore deny them. Defendants admit the

allegations in the second sentence of paragraph 47. Defendants admit that Bowary accurately quotes from the 2021 SPEX Information Bulletin in the third sentence of paragraph 47.

48.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 and therefore deny them.

## COUNT I

## BREACH OF CONTRACT

49.    Defendants restate and incorporate by reference their responses to paragraphs 1-48.

50.    In response to the allegations in paragraph 50, Defendants admit that NBME and FSMB entered into a contract with Bowary at the time he registered for Step 3 of the USMLE and that the terms of the contract are set forth in the Bulletin of Information and the policies referenced therein. Defendants deny the remaining allegations in paragraph 50, which are vague.

51.    Defendants deny the allegations in paragraph 51.

52.    Defendants deny the allegations in paragraph 52.

## COUNT II

## BREACH OF DUTIES OF GOOD FAITH AND FAIR DEALING

53.    Defendants restate and incorporate by reference their responses to paragraphs 1-52.

54.    In response to the allegations in paragraph 54, Defendants admit that NBME and FSMB entered into a contract with Bowary at the time he registered for Step 3 of the USMLE and that the terms of the contract are set forth in the Bulletin of Information and the policies referenced therein. Defendants deny the remaining allegations in paragraph 54, which are vague.

55.    The allegations in paragraph 55 constitute legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants deny that they breached any implied legal duties in their dealings with Bowary.

56.     Defendants deny the allegations in paragraph 56.

57.     Defendants deny the allegations in paragraph 57.

## COUNT III

### BREACH OF COMMON-LAW DUTY OF DUE PROCESS

58.     Defendants restate and incorporate by reference their responses to paragraphs 1-57.

59.     The allegations in paragraph 59 constitute legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants deny the allegations, which are vague.

60.     The allegations in paragraph 60 constitute legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants deny the allegations.

61.     Defendants deny the allegations in paragraph 61.

62.     Defendants deny the allegations in paragraph 62.

## COUNT IV

### BREACH OF CONSTITUTIONAL DUE PROCESS PROTECTIONS

63.     Defendants restate and incorporate by reference their responses to paragraphs 1-62.

64.     The allegations in paragraph 64 constitute legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants deny the allegations.

65.     Defendants deny the allegations in paragraph 65.

66.     Defendants deny the allegations in paragraph 66.

## COUNT V

### NEGLIGENCE

67.     Defendants restate and incorporate by reference their responses to paragraphs 1-66.

68.     The allegations in paragraph 68 constitute legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants deny the allegations.

69.    Defendants deny the allegations in paragraph 69.

70.    Defendants deny the allegations in paragraph 70.

## COUNT VI

## VIOLATION OF LAWS AGAINST UNFAIR OR DECEPTIVE TRADE PRACTICES

71.    Defendants restate and incorporate by reference their responses to paragraphs 1-70.

72.    Defendants deny the allegations in paragraph 72.

73.    Defendants deny the allegations in paragraph 73.

74.    Defendants deny the allegations in paragraph 74.

## COUNT VII

## DEFAMATION

75.    Defendants restate and incorporate by reference their responses to paragraphs 1-74.

76.    Defendants deny the allegations in paragraph 76.

77.    Defendants deny the allegations in paragraph 77.

78.    Defendants deny the allegations in paragraph 78.

## COUNT VIII

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

79.    Defendants restate and incorporate by reference their responses to paragraphs 1-78.

80.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 and therefore deny them.

81.    Defendants deny the allegations in paragraph 81.

82.    Defendants deny the allegations in paragraph 82.

83.    Defendants deny the allegations in paragraph 83.

## COUNT IX

## NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS

84.    Defendants restate and incorporate by reference their responses to paragraph 1-83.

85.    The allegations in paragraph 85 constitute legal conclusions that Defendants are not required to admit or deny, but if so required, Defendants deny the allegations.

86.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 and therefore deny them.

87.    Defendants deny the allegations in paragraph 87.

88.    Defendants deny the allegations in paragraph 88.

89.    Defendants deny the allegations in paragraph 89.

The remaining allegations in Plaintiff's Complaint constitute a Prayer for Relief as to which no responsive pleading is required, but Defendants deny that Plaintiff is entitled to the relief sought or any relief in this action.

**ALL ALLEGATIONS NOT SPECIFICALLY ADMITTED HEREIN ARE DENIED.**

## AFFIRMATIVE DEFENSES

1.    Plaintiff's defamation claim is barred because the statements that Plaintiff alleges were defamatory were true.

2.    Plaintiff's defamation claim is barred by privilege, because the challenged statements were made in good faith and based on a reasonable belief that there was a legal, moral, or social duty to speak out to protect NBME's and FSMB's interests, the interests of the USMLE program, the interests of the parties receiving the communications, and/or the public interest.

3.      Plaintiff's claims arising from or relating to Defendants' statements regarding the USMLE CIR and related proceedings and submitted to RIDOH, BMLD, and others are barred by the Rhode Island anti-SLAPP statute, R.I. Gen. Laws § 9-33-2, because Defendants were exercising their free speech rights under the United States Constitution in connection with issues of public concern, including Plaintiff's competence to practice medicine and the integrity of the USMLE examination process, and the statements were not a sham.

4.      All of Plaintiff's claims are barred by the doctrine of unclean hands.

5.      Plaintiff's requests for injunctive relief are barred in whole or in part by the doctrine of unclean hands.

6.      Plaintiff's request for compensatory damages is barred or limited by his failure to mitigate damages.

7.      Plaintiff's claims against USMLE are barred because USMLE is not an entity with the capacity to be sued.

Defendants presently have insufficient knowledge or information on which to form a belief as to whether they may have additional affirmative defenses available. Defendants reserve the right to assert additional affirmative defenses in the event discovery or further analysis indicates that additional unknown or unstated affirmative defenses are applicable.

WHEREFORE, Defendants pray for judgment on Plaintiff's claims against Defendants as follows:

1.      That Plaintiff take nothing and be denied all relief requested in his Complaint;

2.      That Plaintiff's Complaint be dismissed with prejudice on the merits;

3.      That Defendants recover their fees and costs incurred herein;

4.      That Defendants be awarded attorneys' fees, costs, and compensatory and punitive damages pursuant to R.I Gen. L. § 9-33-2(d); and

5.      That Defendants be awarded such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS BY NBME AND FSMB

### PARTIES

1.      Defendant-Counterclaim Plaintiff National Board of Medical Examiners ("NBME") is a private, not-for-profit organization incorporated in the District of Columbia and headquartered in Philadelphia, Pennsylvania. NBME's mission is to protect the health of the public through the development and administration of high-quality assessments of the knowledge and skills of health professionals and the reporting of the results achieved on such assessments.

2.      Defendant-Counterclaim Plaintiff The Federation of State Medical Boards of the United States, Inc. ("FSMB") is a private, not-for-profit organization incorporated in Nebraska and headquartered in Euless, Texas. FSMB's members consist of state medical and osteopathic regulatory boards (commonly referred to as state medical boards) within the United States and its territories. FSMB supports its member boards as they fulfill their mandate of protecting the public's health, safety, and welfare through the proper licensing, disciplining, and regulation of physicians.

3.      Plaintiff-Counterclaim Defendant Paul Bowary ("Plaintiff" or "Bowary") is, on information and belief, a 2014 graduate of the American University of Beirut Faculty of Medicine and a current resident of Rhode Island.

-17-

## JURISDICTION

4.　　The Court has subject matter jurisdiction over NBME's and FSMB's counterclaim under 28 U.S.C. § 1367(a), as the counterclaim is so related to the claims within the original jurisdiction of the Court that it forms part of the same case or controversy under Article III of the United States Constitution.

## VENUE

5.　　Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (2) as, on information and belief, Plaintiff-Counterclaim Defendant resides in this district and a substantial part of the events giving rise to the counterclaim occurred in this district.

## FACTS

### The United States Medical Licensing Examination

6.　　The United States Medical Licensing Examination ("USMLE") program is jointly owned by NBME and FSMB, and a USMLE Secretariat office supports the USMLE program on behalf of NBME and FSMB.

7.　　The USMLE is a series of standardized examinations used to evaluate applicants' competence for medical licensure. It is designed to assess an examinee's ability to apply the knowledge and demonstrate the fundamental skills that constitute the basis of safe and effective patient care.

8.　　Licensing authorities across the United States, including in Rhode Island, rely upon the USMLE in evaluating the qualifications of individuals seeking an initial license to practice medicine.

9.　　Three "Steps" make up the USMLE, taken at different times in the graduate medical education process: Step 1, Step 2 Clinical Knowledge ("Step 2 CK"), and Step 3. Step 1 assesses

whether candidates can apply basic science concepts that are important to the practice of medicine. Step 2 CK assesses an examinee's ability to apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision. Step 3 assesses whether candidates can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine.

### Bowary's Step Examinations and Rhode Island License Application History

10.    Bowary has taken and passed Step 1, Step 2 CK, and Step 2 CS of the USMLE.[2]

11.    Bowary first applied on December 7, 2015 to take the Step 3 examination. He was a "no show" for that administration of the exam.

12.    Bowary re-applied on January 10, 2018 to take Step 3.

13.    USMLE applicants must familiarize themselves with the USMLE Bulletin of Information before applying to test. When they apply to take a USMLE Step examination, they certify and acknowledge that they have read the most current version of the Bulletin, are familiar with its contents, and agree to abide by the policies and procedures therein.

14.    When Bowary applied on January 10, 2018, to take the Step 3 examination, he certified that he had read the most current version of the USMLE Bulletin of Information (*i.e.*, the 2018 Bulletin of Information), was familiar with its contents, and agreed to abide by the policies and procedures described therein.

15.    The USMLE Bulletin of Information in effect at the time Bowary applied to take the USMLE Step 3 examination in January 2018 (the "2018 Bulletin of Information") prohibits irregular behavior including "[c]hang[ing] any information on score reports, transcripts, or any

---

[2] Step 2 CS is a clinical skills component of the USMLE that was suspended in May 2020 due to the COVID pandemic and subsequently discontinued.

other USMLE-related documents." It also requires that any individual who is subject to investigation for irregular behavior "must cooperate fully with the investigation, including providing all requested documentation and answering truthfully all questions posed during investigative interviews conducted on behalf of the USMLE program."

16.     Bowary took the Step 3 examination on April 8, 2018, and he failed. The minimum passing score was 196, and Bowary received a score of 192. His performance on all subjects fell in the range of "lower performance" to "borderline performance." His score of 192 ranked him at the bottom 5th percentile.

17.     On May 2, 2018, Bowary applied to retake the Step 3 exam. He was a "no show" for this administration of the test.

18.     On November 20, 2018, Bowary reapplied for the Step 3 exam. He took the exam on December 28, 2018, but he again failed. This time, he received a score of 178, well below the minimum passing score of 196 and lower than the first time he tested in April 2018. Bowary's score of 178 ranked him at the bottom 1st percentile.

19.     On January 23, 2019, Bowary applied to take Step 3 a third time, but once again he was a no-show for the exam. Bowary sought a refund of his test registration fees for this third (cancelled) application from FSMB on July 31, 2019 (the last day of his testing window). In his email requesting a refund, Bowary represented that he had "been struggling with personal issues that caused multiple delays" in his retesting and that he had "other application and licensing costs coming ahead and [he] would truly appreciate reimbursement for all or any part of the application fee, as [he had] not really used it".

20.     On August 9, 2019, Bowary sent a follow-up email to FSMB regarding his request for a refund of the fees he paid for his application to take the Step 3 exam a third time. In this email, he wrote, in part:

> I was advised to reach out to you again with documentation regarding my request for refund of my last Step 3 application that I have not ended up using. I had difficult personal circumstances that were behind my multiple usmle step 3 test date changes. However, the reason this was not done during the extended eligibility period is a visa related matter. … This past year has been very difficult for me medically, emotionally and financially. I would be very appreciative if you can help me protect the confidentiality around these problems as well as consider reimbursing me for my last application fee. I am thankful in advance for your understanding. Your office has been empathetic and helpful to me I the past; I hope that I can ask for this last bit of extra support.

21.     On or about August 15, 2019, FSMB issued a partial refund of Bowary's application fees to take the Step 3 exam a third time.

22.     In order to receive a license to practice medicine in Rhode Island, Bowary was required to submit a Uniform Application for Licensure ("Uniform Application") as well as a Medical Professional Information Profile through the Federation Credentials Verification Service (FCVS), which is operated by FSMB.

23.     The Uniform Application is an FSMB-owned, web-based application that was created at the request of the state medical board community. It is designed to enhance the nation's state-based licensure system and to streamline the exchange of trustworthy data between parties. The Uniform Application improves license portability by eliminating the need for physicians, physician assistants, and resident applicants to re-enter information when they contemplate applying for licenses in multiple states.

24.     During completion of the Uniform Application, some elements of the application are pre-populated with information from primary sources of that information (such as the USMLE program) and some information is entered directly by the applicant, but the applicant is required

to review all of the information in the Uniform Application and verify the information shown prior to submission.

25.    Bowary checked a box and accepted the following Terms & Conditions in completing his Uniform Application:

> By clicking the box below, "I accept the Terms and Conditions," **I hereby certify that I am the person named in this application, that all statements I have [made] or shall make with respect thereto are true,** that I am the original and lawful possessor and person named in the various forms and credentials furnished or to be furnished with respect to my application, **and that all documents, forms, or copies thereof furnished or to be furnished with respect to my application are strictly true in every aspect**.  [(emphasis added)]

26.    Page two of the Uniform Application includes a section titled "Examination History." Bowary's Examination History on his Uniform Application shows that he took the Step 3 examination two times, most recently on December 28, 2018, and that he had failed the Step 3 exam.

27.    If Bowary had any changes to make to the Uniform Application, he was asked to contact FSMB for assistance. Bowary did not request any changes.

28.    FSMB submitted the Uniform Application to the Rhode Island Board of Medical Licensure and Discipline ("BMLD") at Bowary's request on January 23, 2020.

29.    The FCVS enables physicians and physician assistants to store their verified core educational, examination, training, and other background credentials and to have this information transferred to third-party users, including state medical boards, hospitals, and insurers. State medical boards rely on this centralized, uniform process for obtaining verified, primary-source information for those applying for licensure.

30.    Bowary signed an affidavit on February 27, 2020, in connection with preparing and submitting his FCVS Medical Professional Information Profile, which includes the following certification (in part):

**I, the undersigned, hereby certify under oath that I am the person named in this application, that all statements I have or shall make with respect thereto are true, that I am the original and lawful possessor and person named in the various forms and credentials furnished or to be furnished with respect to my application and that all documents, forms, or copies thereof furnished or to be furnished with respect to my application are strictly true in every aspect.**

I acknowledge that I have answered all questions contained in the application truthfully and completely. I further acknowledge that failure on my part to answer questions truthfully and completely may lead to me being prosecuted under appropriate federal and state laws.  [(emphasis added)]

31.    On March 4, 2020, FSMB submitted Bowary's FCVS Medical Professional Information Profile to BMLD.

32.    A Certified Transcript of Bowary's USMLE scores, dated March 4, 2020, is found at page 23 of the FCVS Medical Professional Information Profile, reporting two failing scores on Step 3.

**Bowary's Irregular Behavior**

33.    A RIDOH representative contacted Bowary on March 4, 2020 (the same day his FCVS Medical Professional Information Profile was sent to BMLD), asking Bowary to contact her at his earliest convenience.

34.    On March 5, 2020, Bowary sent an email to the RIDOH representative, writing:

Hi Alexandra,

Please find attached copies of my step 3 score report, nbme's [*sic*] explanation, payment transaction report showing that fsmb [*sic*] refunded me for the second attempt after nbme [*sic*] updated the score of my first attempt.

Two last important points. Please make sure the nbme [*sic*] email copy is kept confidential as I was required to only share this with my program directors. Also, please let me know if I need to submit another check as my bank cancels checks that are not cashed within a certain period of time.

Thanks again for your help!

Best,
Paul Bowary

35.     Bowary attached to this March 5, 2020 email to RIDOH .jpg images of a purported July 8, 2019 email from NBME, a purported April 18, 2018 Step 3 score report showing a passing score on the exam, and FSMB documents showing a partial refund dated August 15, 2019, of a Step 3 examination fee.

36.     The purported July 8, 2019 email from NBME that Bowary attached to his March 5, 2020 email to RIDOH indicated that a recheck had been conducted of his first Step 3 score (i.e., the failing score for his April 8, 2018 exam) and that his "updated Step 3 score was available, shortly after [his] second attempt date" (i.e., December 28, 2018) and reflected "a PASS classification." The purported Step 3 score report attached to Bowary's March 5, 2020 email to RIDOH reflected a passing score of 199 on the Step 3 examination Bowary took in April 2018.

37.     Later in the day on March 5, 2020, Bowary sent an email to FSMB regarding his April 2018 USMLE Step 3 score. Bowary reported, in part, to FSMB:

> I am a 4th year Psychiatry resident at Brown. I was in contact with NBME's Examinee Support Services last summer in re. to my Step 3 rescoring. They were very helpful at that time and assisted me in submitting that request directly via their secretariat office. I was eventually informed that I passed and received the score report I am attaching along with a copy of en [*sic*] email from NBME explaining the process. I never checked in with FSMB after that as what I understood from the email was that the process will be automatic. I was able to get refunded though for the attempt that I understood was voided or for the application that I eventually did not need as I received my updated score (please see attached).

Bowary attached to his March 5, 2020 email to FSMB his putative revised score report, bearing his name and USMLE number, a Step 3 exam date of April 8, 2018, and a passing score of 199, along with a screenshot of the July 8, 2019 email that he supposedly received from NBME and a copy of the FSMB fee refund summary. Bowary wrote that he was "sending everything as screenshots for more accuracy but also to avoid forwarding any email that NBME had urged [him] not to forward."

38.    Bowary forwarded his March 5, 2020 FSMB email to NBME later that same day, and NBME forwarded the email string and attachments to the USMLE Secretariat for investigation.

39.    On March 5, 2020, NBME informed Bowary that his situation had been escalated to the USMLE Secretariat's office for investigation.

40.    Through various email communications between March 5, 2020 and March 17, 2020, NBME or the USMLE Secretariat asked Bowary to send an original (*i.e.*, native) copy of the July 8, 2019 email and score report he purportedly received from NBME. Bowary responded by providing forwarded or embedded versions of the email or screenshots or .pdf copies, not the original email and attachment.

41.    Bowary finally provided  a copy of the purported July 8, 2019 email in native .msg format to the USMLE Secretariat on March 19, 2020 (the "First Native Email"), writing: "I am submitting all I have as attachments …." The text in the First Native Email version of the July 8, 2019 email differs from the text in the version of the email that Bowary provided on March 5, 2020 to RIDOH, FSMB, and NBME. It also differs from the text in the version of the email that Bowary sent to the USMLE Secretariat on March 17, 2020. In other words, at different times, Bowary distributed substantively different versions of the email that he claims to have received from NBME on July 8, 2019.

42.    On April 10, 2020, Bowary sent an email to a RIDOH representative in which he wrote, in part:

> I have not heard back from you re. a matter that should have been dealt with urgently especially with the growing need of physicians in this pansdemic [*sic*].
>
> I have been overwhelmingly busy at work that I forgot about this. I am shocked to see that my license application is still pending. I gave you the consent to call anyone you want in case you guys 'do not believe' what a physician, treating patients in your state, up until now, is telling you.

-25-

this [*sic*] being said, if this process cannot be finalized asap, I would like you and Dr McDonald to explain in writing that you are declining my application, knowing you have received all the documents required for me to get my full license. I said it before, I am saying this again, USMLE are taking super long to process anything (in this case to contact you with my updated scores) because of Covid-19. You are welcome to contact them. I am also attaching the original emails from USMLE with my passing scores. This email is an untouched unforwarded original version of what USMLE sent me. You can review it with your IT department; this is a way to share unmodified original emails. I am not sure what else I can provide….

RIDOH forwarded this email and its attachments to the USMLE Secretariat on April 16, 2020. The text in the version of the July 8, 2019 email attached to this April 10, 2020 communication by Bowary to RIDOH is identical to the text in the version of the email that Bowary sent to the USMLE Secretariat on March 19, 2020. It differs from the text in the version of the email that Bowary sent to RIDOH, FSMB, and NBME on March 5, 2020 and to the USMLE Secretariat on March 17, 2020.

43.    On April 27, 2020, the USMLE Secretariat informed Bowary that there was evidence he may have engaged in irregular behavior by altering his Step 3 score report and presenting the altered report to the FSMB, NBME, and RIDOH as authentic.

44.    Following a proceeding before the USMLE Committee on Individualized Review ("CIR"), the USMLE Secretariat informed Bowary in a letter dated September 23, 2020, that the CIR had determined that he engaged in irregular behavior.

45.    Bowary appealed the CIR's determination to the USMLE Composite Committee.

46.    On or about October 15, 2020, Bowary entered into a Voluntary Agreement Not to Practice Medicine with BMLD.  The Agreement noted the CIR's irregularity determination, stated that Bowary was appealing that determination, and included the following Findings of Fact (among others):

6.  Respondent [(Dr. Bowary)] has represented to the Board that he received an email dated July 8, 2019, the sender of which is identified as webmail@nbme.org, ("NBME Email"), indicating that the score of Respondent's April 8, 2018 USMLE

Step 3 Examination had been submitted to a recheck process, resulting in a passing score. Respondent further represented that attached to that email was a document entitled 'United States Medical Licensing Examination Step 3 Score Report' ("USMLE Score Report") which reflected that passing score.

\*\*\*\*

10. On March 4, 2020, Respondent was contacted by a representative of the Board regarding the fact that his FCVS Credentials Portfolio indicated he had failed the USMLE Step 3 Examination.

11. On March 5, 2020, Respondent submitted to that representative of the Board copies of the NBME Email and the USMLE Score Report. On April 28, 2020, Respondent's counsel at the time also submitted a copy of the USMLE Step 3 Score Report to the Board. Based on the provided documents, the Board accepted that Respondent had passed USMLE Step 3 and Respondent was granted licensure by the Board on April 28, 2020.

47.     Bowary signed the Voluntary Agreement Not to Practice Medicine on October 14, 2020, thereby acknowledging his agreement with the factual statements contained in the Agreement. The Director of RIDOH signed the Agreement on October 15, 2020, acting on behalf of BMLD.

48.     On February 12, 2021, the USMLE Secretariat informed Bowary that the Composite Committee concluded that the CIR acted in compliance with applicable USMLE policies and had not made a decision that was clearly contrary to the weight of the evidence. The Composite Committee thus upheld the CIR's determination that Bowary engaged in irregular behavior.

49.     On or about March 29, 2021, Bowary filed this lawsuit in response to the proceedings before the USMLE CIR and USMLE Composite Committee.

50.     In an affidavit filed in this lawsuit dated July 7, 2021, Bowary testified under oath that he "received an email dated July 8, 2019, the sender of which is identified as webmail@nbme.org, indicating that my score on the April 8, 2018 USMLE Step 3 exam had been submitted to a recheck process, resulting in a passing score." Bowary attached as Exhibit A-10 to

his affidavit a copy of the email and score report he said he received. The text in this version of the email matches the text in the version of the email Bowary sent to RIDOH, FSMB, and NBME on March 5, 2020, and to the USMLE Secretariat on March 17, 2020, but not the text in the version of the email he sent to the USMLE Secretariat on March 19, 2020 or to RIDOH on April 10, 2020, which he represented to be the "original" email he received from NBME in July 2018.

51.    On December 16, 2021 the Court entered a written Preliminary Injunction order that directed Defendants to redo Bowary's CIR and Composite Committee proceedings. A Corrected Preliminary Injunction order was entered January 5, 2022.

52.    As part of the new CIR proceeding, on March 4, 2022, through his attorney, Bowary provided the USMLE Secretariat with a zip file containing a native-format version of the July 8, 2019 email that Bowary says he received from NBME (the "Second Native Email"), with a PDF version of the purported April 2018 Step 3 score report. The text in the Second Native Email matches the text in the version of the email Bowary sent to RIDOH, FSMB, and NBME on March 5, 2020, to the USMLE Secretariat on March 17, 2020, and to the Court on July 7, 2021. The text in the Second Native Email does not match the text in the July 8, 2019 email that Bowary sent to the USMLE Secretariat on March 19, 2020 (the First Native Email), when he was asked to provide "a copy of the email in its original form" and said in his email, "I am submitting all I have as attachments as you requested;" or the text of the July 8, 2019 email that Bowary sent to RIDOH on April 10, 2020, when he said "[t]his email is an untouched unforwarded original version of what USMLE sent me."

53.    Bowary has never passed Step 3 of the USMLE.

54.    Bowary never sought a recheck of his April 2018 Step 3 score.

55.     The Step 3 score report purporting to show that Bowary passed the April 2018 examination that Bowary sent to multiple individuals and entities, including RIDOH, FSMB, and NBME, is not authentic.

56.     Neither version of the purported July 8, 2019 email that Bowary sent to various individuals and entities, including RIDOH, FSMB, and NBME, is an authentic email sent by NBME.

57.     Bowary does not dispute that neither version of the alleged July 8, 2019 email that he said he received from NBME is an authentic email sent by NBME.

58.     Bowary does not dispute that the Step 3 score report that he provided to various parties showing a passing score has been altered and is not an authentic score report.

59.     On information and belief, Bowary created or caused or allowed to be created the fabricated July 8, 2019 emails and the altered Step 3 score report.

60.     Bowary's representation to RIDOH on March 5, 2020, that FSMB refunded his fees for a subsequent Step 3 attempt after his first score on his first attempt (in April 2018) was "updated" to show a passing score was false.

61.     Bowary's representations to FSMB on March 5, 2020 that he was in contact with NBME in the summer of 2019 "in re to my Step 3 rescoring," that they "assisted me in submitting that request directly via their secretariat office," and that he "was able to get refunded … for the attempt that I understood was voided or for the application that I eventually did not need as I received my updated score," were false.

62.     At his second appearance before the CIR on September 2, 2022, Bowary was asked, among other questions, "Can you think of anybody who perhaps has a reason to try to sabotage

you or to scope out to get you? Is there anyone who you've run across that would have access to do so?"  Dr. Bowary responded as follows:

> I would be lying if I said, after two years of obsessing about this, I did not think of different options related to me and not to NBME after I was informed it's falsified. I would hate myself if I give you names right now, but I did think of a colleague who—you know, it's a colleague from Brown that had—you know, had access because he used to come to my place. And I would not be able to say names right now because I would never forgive myself if that's not true. I question my judgment around this because I'm like: Is this paranoia? Because it doesn't make sense. But if I have to think and I have to tell you yes or no to this, yes, I have thought, but I cannot come and tell you, you know, I think that's—that's this person. I cannot— in the right state of mind with my morals, I cannot say that.

63.     On November 29, 2022, the CIR again concluded that Bowary engaged in irregular behavior. Bowary  appealed the CIR determination to the USMLE Composite Committee. On July 24, 2023, the Composite Committee upheld the CIR's determination.

64.     Bowary provided false information and/or made false statements in his appearances before and submissions to the USMLE CIR and the USMLE Secretariat.

## COUNT I – BREACH OF CONTRACT

65.     NBME and FSMB incorporate by reference paragraphs 1-64 of their Counterclaim above as though set forth fully herein.

66.     NBME and FSMB entered into a contract with Bowary at the time he registered for Step 3 of the USMLE, and the terms of the contract are set forth in the applicable USMLE Bulletin of Information and the policies referenced therein.

67.     The USMLE 2018 Bulletin of Information prohibited irregular behavior, including changing information on score reports, providing false information or making false statements on or in connection with USMLE-related documents, altering or misrepresenting examination scores or outcomes, and failing to cooperate fully in any investigation of a violation of USMLE rules.

68.     When Bowary applied to take the Step 3 examination on January 10, 2018, he certified and attested that he had read the USMLE 2018 Bulletin of Information, was familiar with its contents, and agreed to abide by the policies and procedures described therein.

69.     In exchange for Bowary's promise to abide by the 2018 Bulletin of Information and the policies and procedures described therein and his application fee, NBME and FSMB permitted Bowary to sit for the Step 3 examination in April 2018.

70.     Bowary breached his contract with NBME and FSMB by altering his April 2018 score report; providing false information relating to (among other things) his April 2018 Step 3 score, the purported July 2019 email from NBME attaching a false April 2018 score report, and FSMB's refund of his exam application fees; failing to fully cooperate with the USMLE Secretariat investigation of his violation of USMLE rules and to provide truthful information during that investigation; and failing to perform his contractual obligations in good faith.

71.     As a result of Bowary's breaches, NBME and FSMB suffered damages, including fees and expenses incurred in conducting an investigation of his irregular behavior and the purported July 2019 email, in an amount to be determined at trial.

**COUNT II – VIOLATION OF COMPUTER CRIME STATUTE**

72.     NBME and FSMB incorporate by reference paragraphs 1-71 of their Counterclaim above as though set forth fully herein.

73.     Pursuant to R.I. Gen. Laws § 11-52-3, "Whoever, intentionally, without authorization, and for fraudulent or other illegal purposes, directly or indirectly, accesses, alters, damages, or destroys any computer, computer system, computer network, computer software, computer program, or data contained in a computer, computer system, computer program, or computer network shall be guilty of a felony and shall be subject to the penalties set forth in § 11-

52-5." For purposes of this provision and other provisions of this statute, "'Computer data' means any representation of information, knowledge, facts, concepts, or instructions which is being prepared or has been prepared and is intended to be processed, is being processed, or has been processed in a computer or computer network. 'Computer data' may be in any form, whether readable only by a computer or only by a human or by either, including, but not limited to, **computer printouts**, magnetic storage media, punched cards, or data stored internally in the memory of the computer." R.I. Gen. Laws § 11-52-1(3) (emphasis added).

74.    Pursuant to R.I. Gen. Laws § 11-52-4.1(a), "It shall be unlawful for any person to use a computer or computer network without authority and with the intent to: ... (3) Alter or erase any computer data, computer programs, or computer software; ... [or] (5) Cause physical injury to the property of another...."

75.    Bowary violated the above statutory provisions by intentionally altering computer data (*i.e.*, his USMLE Step 3 score and score report and one or more emails he received from NBME) for fraudulent purposes (*i.e.*, to obtain a medical license) and without authorization to do so; using a computer to alter computer data (*i.e.*, his USMLE Step 3 score and score report); and using a computer to damage the property of NBME and FSMB (*i.e.*, Bowary's official Step 3 score report).

76.    Pursuant to R.I. Gen. Laws § 11-52-6(a), "Any person injured as a result of a violation of this chapter may bring a civil action against the violator for compensatory damages, punitive damages, court costs, and any other relief that the court deems appropriate, including reasonable attorneys' fees."

77.    NBME and FSMB were injured as a result of Bowary's violations, including the fees and expenses incurred in conducting an investigation of his altered score report and related

irregular behavior, in an amount to be determined at trial, and are entitled to recover compensatory damages, punitive damages, court costs, and any other relief that the court deems appropriate, including attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, NBME and FSMB respectfully request as relief for their Counterclaim that the Court:

(i)      Award NBME and FSMB compensatory damages, punitive damages, costs, and attorneys' fees, in amounts to be proven at trial; and

(ii)      Award NBME and FSMB such other relief as the Court may deem just and proper.

Dated:  October 26, 2023

Respectfully submitted,

    /s Stacey Nakasian
Stacey Nakasian (Bar No. 5069)
snakasian@duffysweeney.com
Duffy & Sweeney, Ltd.
321 South Main Street, Suite 400
Providence, RI 02903-7109
Telephone:  401-455-0700
Facsimile:   401-455-0701

Robert A. Burgoyne - *pro hac vice*
rburgoyne@perkinscoie.com
Caroline M. Mew - *pro hac vice*
cmew@perkinscoie.com
Perkins Coie LLP
700 13th St., N.W., Suite 800
Washington, DC 20005-3960
Telephone: 202-654-6200
Facsimile:  202-654-6211

Attorneys for Defendants NBME and FSMB

## **CERTIFICATE OF SERVICE**

I certify that on October 26, 2023, a copy of the foregoing document was electronically filed and thereby served on Plaintiff through the Court's CM/ECF system. The electronically filed document is available for viewing and downloading from the Court's ECF system.

 */s Stacey Nakasian*
Stacey Nakasian